## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DERRICK L. KING,** | **CIVIL ACTION** |
| Plaintiff, | |
| *v.* | **NO. 18-3962-KSM** |
| **DANIEL VANBILLIARD**, et al., | |
| Defendants. | |

## <u>MEMORANDUM</u>

**MARSTON, J.**                                                                                    **August 3, 2023**

*Pro se* Plaintiff Derrick L. King, who is currently incarcerated at SCI Huntingdon, brings this action pursuant to 42 U.S.C. § 1983 against Berks County Hearing Examiner Daniel Vanbilliard and S.O.G.[1] Operator Stephen Dew.  (Doc. No. 1.)  He claims that they violated his due process rights under the Fourteenth Amendment and that Dew sexually harassed and sexually assaulted him during a pat down search.  (*See* Doc. Nos. 1, 3.)  Presently before the Court are Defendants' motions to dismiss (Doc. Nos. 65, 67), which seek dismissal of King's Complaint in its entirety.  King has not responded to the motions or Defendants' discovery requests despite repeated notices.  For the following reasons, the motions are granted.

### I.        FACTUAL BACKGROUND

Taking the allegations in the Complaint (Doc. No. 1) and King's September 12, 2018 statement (Doc. No. 3) as true, the relevant facts are as follows.

King's claims arise out of three incidents in August and September 2018, when he was an inmate in the Berks County Jail System.  Two incidents involve allegedly improper searches

---

[1] Neither party defines "S.O.G." for the Court.

conducted by Operator Dew, and the third involves a misconduct citation that Dew issued against King and a misconduct hearing overseen by Examiner Vanbilliard.

Beginning with the improper searches, King alleges that on August 9, 2018, Operator Dew conducted a search of King's cell, took a brown paper bag containing personal papers related to King's pending criminal lawsuit, and threw the papers away.  (Doc. No. 3 at 2.)  About a month later, on September 7, 2018, Operator Dew and two correctional officers conducted a second search of King's cell.  (*Id.* at 1.)  After the search, Operator Dew conducted a pat down of King, grabbing his testicles and "grip[ping] [King's] penis very hard."  (*Id.* at 1–2.)  King contends that both incidents were captured on video.  (*Id.*)  King ultimately filed a grievance form for the destruction of his personal property and a grievance form for sexual harassment and assault.  (*Id.* at 7 (personal property); *id.* at 5–6 (sexual harassment).)  The reviewing administrator denied those grievances after viewing the relevant video footage and finding that the first video did not show Operator Dew removing a brown paper bag from King's cell and that the second showed "the pat search performed by Operator Dew was in accordance with Berks County Jail System Policy" (*id.* at 5–6).

In addition to these allegedly improper searches, King also brings claims in connection with a misconduct citation that Operator Dew filed against him.  King alleges that on August 21, 2018, Operator Dew filed a misconduct citation against King for "making threats to him."  (Doc. No. 1 at 3, 4.)  According to Dew, King yelled, "When I see you Dew, I'm gonna shoot you with a real gun!"  (*Id.*; *see also id.* at 13.)  Hearing Examiner Vanbilliard oversaw a disciplinary hearing held in connection with the citation.  (*Id.* at 3.)  During the hearing, King argued that he was asleep when the incident occurred and could not have made the threat.  (*Id.*)  King claims he had six witnesses willing to testify to that fact, but Vanbilliard refused to call any witnesses at

the hearing and ultimately found King committed the misconduct alleged by Dew.  (*Id.* at 4.)

King appealed Vanbilliard's decision to the warden, but she denied the appeal because on a

recording of the incident, she could hear King yell to Dew, "I'll shoot you with a real fucking

gun."  (*Id.* at 15.)  After the warden rejected King's appeal, he filed grievances against Dew and

Vanbilliard, both of which were denied.  (*Id.* at 9–10.)

## II.    PROCEDURAL HISTORY

King filed his initial Complaint on September 7, 2018, and the case was assigned to the

Honorable C. Darnell Jones, II.  (Doc. No. 1.)  In his Complaint, King describes the August 21

misconduct citation and the hearing that followed, and he asserts due process claims against Dew

for submitting a "false misconduct," and against Vanbilliard for violating King's right to "have a

fair hearing [and] to call people as witnesses."  (*Id.* at 3–4.)  A few days later, on September 12,

King submitted a statement amending his Complaint to include due process claims against Dew

for the destruction of his property and to include sexual harassment and assault claims in

connection with the September 7 search.  (*Id.* at 1–2.)  On September 25, 2018, Judge Jones

screened the Complaint and the September 12 statement, deemed the Complaint filed, and

ordered service on Defendants.  (*See generally* Doc. No. 6.)  Defendants filed their Answer on

November 26, 2018 (Doc. No. 14) and an Amended Answer on December 12 (Doc. No. 17).

Throughout the next year, Plaintiff filed various motions, all of which were denied.  (*See*

Doc. Nos. 12 (motion for counsel), 13 (motion for counsel), 16 (motion to amend), 20 (speedy

trial motion); *see also* Doc. Nos. 15 (denying motions to appoint counsel), 18 (denying motion to

amend), 21 (denying speedy trial motion).)  The Court then scheduled a preliminary pretrial

conference for October 1, 2019.  (Doc. No. 23.)  That conference was later rescheduled for

December 9, 2019 (Doc. No. 25), but before the hearing occurred, King filed a motion to forfeit

the case.  (Doc. No. 26.)  After reviewing the motion, Judge Jones dismissed the case on

November 22, 2019.  (Doc. No. 29.)  A few days later, however, King submitted a letter stating that he "change[d] his mind about forf[e]it."  (Doc. No. 30.)  Judge Jones vacated his November 22 Order (Doc. No. 31), reopened the case (*id.*), and rescheduled the preliminary pretrial conference for February 26, 2020 (Doc. Nos. 32, 35).

A few days before that conference, on February 13, 2020, Plaintiff again requested appointment of counsel (Doc. No. 34), which Judge Jones granted (Doc. No. 37).  Judge Jones directed the Clerk of Court to attempt to appoint counsel from the Court's Prisoner Civil Rights Attorney Panel and to place the case in suspense pending the outcome of that attempt.  (Doc. No. 37.)  After sixteen months, when no attorney had volunteered to accept appointment in this case, Judge Jones removed the case from suspense and explained that King would be required to represent himself.  (Doc. No. 46.)  This Order was entered on July 8, 2021.  (*Id.*)

Roughly one year later, on June 21, 2022, the case was reassigned to the Honorable Karen Spencer Marston (Doc. No. 48), and the Court entered a Scheduling Order, which set the deadline for discovery as January 31, 2023 (Doc. No. 59).  On Defendants' request, this discovery deadline was extended to April 7, 2023.  (*See* Doc. Nos. 60, 61.)  On April 4, Defendants moved extend the discovery deadline yet again because King had refused to respond to their discovery requests.  (Doc. No. 62.)  Defendants also sought an order compelling King to respond.  (*Id.*)  The Court granted both requests, ordering King to respond to the outstanding discovery requests by May 14, 2023 and setting a new discovery deadline of June 9, 2023.  (Doc. No. 63.)

On May 22, 2023, when King still had not responded to Defendants' discovery requests, Defendants filed a motion to dismiss for failure to comply with the Court's Order.  (Doc. No. 65.)  When King missed the deadline for responding to that motion, the Court *sua sponte*

extended the response deadline and ordered him to file a response by June 27, 2023.  (Doc. No. 66.)  That Order warned King that if he failed to respond, the Court could grant the motion to dismiss as unopposed under Local Rule 7.1.  (*Id.* at n.1.)  June 27 came and went without a response from King, and on June 30, 2023, Defendants filed a second motion to dismiss for lack of prosecution.  (Doc. No. 67.)  As of the date of this Memorandum, King has not responded to either motion to dismiss.

## III.    DISCUSSION

When a party has failed to timely respond to a motion to dismiss within 14 days, the Court is authorized to grant the motion as uncontested under our local rules.  *See* Loc. R. Civ. P. 7.1(c) ("Unless the Court directs otherwise, any party opposing the motion shall serve a brief in opposition together with such answer or other response that may be appropriate, within fourteen (14) days after service of the motion and supporting brief.  *In the absence of timely response, the motion may be granted as uncontested except as provided under Fed.R.Civ.P. 56.*" (emphasis added)); *see also Fleming v. United States VA Med. Ctrs.*, 348 Fed. App'x. 737, 738 (3d. Cir. 2009) (affirming district court's grant of a defendant's motion to dismiss pursuant to Rule 7.1(c) as "within its authority," where the plaintiff failed to respond after approximately four weeks); *Abdulhay v. Abdulhayoglu*, No. 5:22-CV-02066-JMG, 2022 WL 6768194, at *3 n.3 (E.D. Pa. Oct. 11, 2022) ("It is within a district court's discretion to grant a motion to dismiss as unopposed pursuant to Local Civil Rule 7.1(c).").

The Court acknowledges that the Third Circuit generally disfavors the disposition of a motion to dismiss for failure to comply with a procedural rule.  *See Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991) ("The fact is that if a motion to dismiss is granted solely because it has not been opposed, the case is simply not being dismissed because the complaint has failed to state a claim upon which relief may be granted.  Rather, it is dismissed as a sanction for failure

to comply with the local court rule.").  Instead, it is preferred that a district court undertake a merits analysis of the complaint, even if a plaintiff has failed to respond to a motion to dismiss. *See Gary v. Pa. Human Relations Comm'n*, 497 F. App'x 223, 226 (3d Cir. 2012) ("[M]otions to dismiss should not be granted without an analysis of the merits of the underlying complaint, notwithstanding local rules regarding the granting of unopposed motions."); *Stackhouse*, 951 F.2d at 30 ("[T]his action should not have been dismissed solely on the basis of the local rule without any analysis of whether the complaint failed to state a claim upon which relief can be granted, as provided in Fed.R.Civ.P. 12(b)(6).").

This general guidance notwithstanding, the Third Circuit has clarified that the Court's local rules are not entirely without force and effect:

> In reaching our result, we do not suggest that the district court may never rely on the local rule to treat a motion to dismiss as unopposed and subject to a dismissal without a merits analysis.  There may be some cases where the failure of a party to oppose a motion will indicate that the motion is in fact not opposed, particularly if the party is represented by an attorney and in that situation the rule may be appropriately invoked.  *Nor do we suggest that if a party fails to comply with the rule after a specific direction to comply from the court, the rule cannot be invoked.*  Thus, our holding is not broad.

*Stackhouse*, 951 F.2d at 30 (emphasis added).  Here, King has continuously failed to meet discovery deadlines, ignored the Court's orders, and failed to respond to Defendants' motions to dismiss, despite repeated extensions, reminders, and warnings from the Court about his obligation to engage in discovery and motion practice, and the consequences he faces if he fails to do so.  The Court is satisfied that, in light of the procedural record described herein, dismissal of this case is appropriate.  *Contra. Gary*, 497 F. App'x at 226 ("While we have said that 'some cases' could be dismissed as unopposed, 'particularly if the party is represented by an attorney,' *or if the party failed to comply with a court's orders*, that is not the situation here.  The District

Court did not give Gary any notice that it was considering the sanction of dismissal for failure to comply with local procedure." (emphasis added)).

In granting a motion to dismiss under these circumstances, the Third Circuit has further instructed that "a district court must analyze the relevant factors set forth in *Poulis v. State Farm Fire & Casualty Co.*, 747 F.2d 863 (3d Cir. 1984), before concluding that the sanction of dismissal is warranted." *Gary*, 497 F. App'x at 226; *see also Hernandez v. Palakovich*, 293 F. App'x 890, 895 (3d Cir. 2008) (rejecting "the proposition that a district court may dismiss a case without considering the *Poulis* factors whenever a plaintiff fails to comply with a briefing deadline"). The six *Poulis* factors outlined by the Third Circuit are:

> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure [to participate in the prosecution of the case]; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

747 F.2d at 868. "[N]ot all of the *Poulis* factors need be satisfied in order to dismiss a complaint." *Mindek v. Rigatti*, 964 F.2d 1369, 1373 (3d Cir. 1992). We address these factors, in turn, below.

*(1)*    *Personal Responsibility.*   The first *Poulis* factor requires the Court to consider the extent to which King is personally responsible for failing to respond to Defendants' discovery requests and the outstanding motions to dismiss. King was repeatedly notified that he needed to timely respond to outstanding discovery requests and Defendants' motion to dismiss, but he failed to do so. Because King is proceeding *pro se*, his failure to respond cannot be attributed to anyone but him. *See Nieves v. Cnty. to Courthouse to S.C.I. State Prison Transp.*, No. 4:20-CV-1193, 2022 WL 19350600, at *8 (M.D. Pa. Aug. 29, 2022), *report and recommendation adopted*,

No. 4:20-CV-1193, 2022 WL 19350590 (M.D. Pa. Sept. 16, 2022) (finding that *pro se* plaintiff who had been directed to respond to motion to dismiss no less than four times "was aware of this obligation" and that "the failure to file a brief in opposition cannot be attributed to anyone but Plaintiff"); *accord Briscoe v. Klaus*, 538 F.3d 252, 259 (3d Cir. 2008) ("[I]t is logical to hold a pro se plaintiff personally responsible for delays in his case because a pro se plaintiff is solely responsible for the progress of his case, whereas a plaintiff represented by counsel relies, at least in part, on his or her attorney); *Malibu Media, LLC v. Paek*, Civil Action No. 13-2766, 2015 WL 779494, at *2 (E.D. Pa. Feb. 23, 2015) ("Because Defendant is proceeding *pro se*, he alone is responsible for his failure to comply with this Court's orders."); *Jimenez v. Rosenbaum-Cunningham, Inc.*, Civil Action No. 07-1066, 2010 WL 1303449, at *6 (E.D. Pa. Mar. 31, 2010) (holding that the first *Poulis* factor weighed in favor of default judgment even though the defendant did not have counsel because "his *pro se* status [does not] excuse his failure to participate in the litigation" and he failed to present "any excuse for his non-participation in the litigation and his disregard of [the court's] Orders").

The first factor weighs in favor of granting the motions to dismiss.

*(2)     Prejudice.*  Next, the Court considers the prejudice that King's failures have caused Defendants.  A finding of prejudice in the context of *Poulis* does not require "irremediable harm," rather, "the burden imposed by impeding a party's ability to effectively prepare full and complete trial strategy is sufficiently prejudicial."  *Williams-Bearden v. Clouser*, No. 4:20-CV-1495, 2021 WL 4743705, at *2 (M.D. Pa. Oct. 12, 2021) (citing *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 222 (3d Cir. 2003); *Adams v. Trs. of N.J. Brewery Emps.' Pension Tr. Fund*, 29 F.3d 863, 874 (3d Cir. 1994)).  Prejudice includes deprivation of information through

non-cooperation with discovery, and costs expended obtaining court orders to force compliance with discovery.  *See Bedwell*, 843 F.2d at 693–94.

This case has been pending for almost five years and has not moved past the initial discovery stage.  At least some of that delay can be attributed to King's actions, which resulted in the case being held in suspense for almost a year and a half.  (Doc. Nos. 37, 42, 45.)  In addition, Defendants were forced to file a motion to compel, and the Court was forced to extend the discovery deadline because King refused to respond to Defendants' discovery requests.  (Doc. Nos. 62, 63.)  Despite extensions by the Court, demands by the Defendant, and multiple orders from the Court, King has failed to respond to the Defendants' outstanding discovery requests or their motions to dismiss, "frustrat[ing] and delay[ing] the resolution of this matter," thereby causing prejudice to Defendants' interest in a timely resolution of this case.  *See Poulis*, 747 F.2d at 868 (finding that the defendants were prejudiced because the plaintiffs did not answer interrogatories and the defendants had to file a motion to compel plaintiffs' answers); *Williams-Bearden,* 2021 WL 4743705, at *2 (finding prejudice to the defendants where the plaintiffs had failed to respond to motion to dismiss and/or summary judgment for almost six months).  As such, the Court finds that the second factor also weighs in favor of granting the motions to dismiss.

*(3)*     *History of Dilatoriness.*  The Court also considers whether King has engaged in a pattern of dilatory conduct throughout the course of the litigation.  *See Adams*, 29 F.3d at 875 ("A party's problematic acts must be evaluated in light of his behavior over the life of the case.").  "Conduct that occurs one or two times is insufficient to demonstrate a history of dilatoriness," however, "extensive or repeated delay or delinquency constitutes a history of dilatoriness, such as *consistent non-response to interrogatories*, or *consistent tardiness in*

*complying with court orders.*"  *Nieves*, 2022 WL 19350600, at *9 (cleaned up) (emphasis added). This litigation has been characterized by a consistent delay by King.  In addition to Defendants' repeated reminders to King to respond to their discovery requests, the Court extended discovery twice to account for his lack of response and ordered him to engage in discovery, a direction which he ignored.  Later, the Court directed King to respond to the Defendants' first motion to dismiss, which he again ignored.

The Court recognizes that King is incarcerated, and that this likely contributed to his lack of response in this case.  Indeed, King's conduct up to this point has been "viewed liberally because he is a *pro se* litigant."  *Id.*  Nevertheless, there is a limit to this liberal reading, and the Court's tolerance for these delays has waned.  Thus, the Court finds that this factor also weighs in favor of dismissal.  *See Williams-Bearden*, 2021 WL 4743705, at *2 ("The Court finds that [*pro se*] Plaintiffs have delayed this matter to the extent that [their] conduct constitutes a continuous stream of dilatory conduct."); *see also Ware*, 322 F.3d at 224 (finding no abuse of discretion in the district court's conclusion that that the plaintiff acted in a dilatory fashion when it "failed repeatedly" to provide a damages calculation for the defendant); *Emerson v. Thiel Coll.*, 296 F.3d 184, 191 (3d Cir. 2002) (finding that the "procedural history of this case reflects continuous dilatoriness" as demonstrated by the plaintiff's multiple requests for stays and failure to comply with multiple deadlines).

*(4)*    *Willful or Bad Faith Conduct.*  The fourth factor requires the Court to assess whether King's failure to respond to the outstanding discovery requests and motions to dismiss was willful or in bad faith.  "Willfulness involves intentional or self-serving behavior, and not mere negligence."  *Nieves*, 2022 WL 19350600, at *9 (quoting *Adams*, 29 F.3d at 875).  A review of the Docket shows that the Court's numerous orders on discovery were sent to King at

his most recent address, SCI Huntingdon, suggesting that he received each order and has intentionally chosen not to comply with them.  Indeed, King has not filed any documents with the Court since March 31, 2021, over two years ago.  Accordingly, the Court finds that this factor also weighs in favor of dismissal.  *See Williams-Bearden*, 2021 WL 4743705, at *2 ("Here, Plaintiffs have violated the local rules, and have failed to comply with a Court order directing them to take specific action in this case, the Court is compelled to conclude that Plaintiffs' actions were not negligent, but instead reflect an intentional disregard for the Court's local rules and its order.  Thus, Plaintiffs' silence and failure to litigate this action lead to an inference that Plaintiffs have willfully abandoned this case."); *cf. Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 640–43 (1976) (holding that the district court did not abuse its discretion when it found the plaintiffs acted in bad faith and dismissed the complaint because the plaintiff failed for seventeen months to answer "crucial interrogatories . . . despite numerous extensions granted at the eleventh hour and, in many instances, beyond the eleventh hour, and notwithstanding several admonitions by the Court and promises and commitments by the plaintiffs" (quotation marks omitted)).

(5)     *Effectiveness of Other Sanctions.* The fifth factor, the effectiveness of other sanctions, also weighs in favor of dismissal.  The Court acknowledges that "[d]ismissal is a sanction of last resort, and it is incumbent upon a court to explore the effectiveness of lesser sanctions before ordering dismissal."  *Nieves*, 2022 WL 19350600, at *9 (citing *Poulis*, 747 F.2d at 868.)  But in cases like this one, where the plaintiff is proceeding *pro se* and *in forma pauperis*, there is evidence to support a reasonable inference that the plaintiff would not be able to pay monetary sanctions, and the Court is left with few options.  *See Briscoe*, 538 F.3d at 263 ("Where a plaintiff is proceeding pro se, and moreover, is proceeding in forma pauperis, we have

upheld… that no alternative sanctions existed because monetary sanctions, including attorney's fees, 'would not be an effective alternative.'" (quoting *Emerson*, 296 F.3d at 191)).   In addition, King's failure to comply with the Court's previous orders directing him to respond to Defendants' discovery requests and their first motion to dismiss supports the inference that further orders would not be effective.  (*See* Doc. No. 66.)  *See Nieves*, 2022 WL 19350600, at *9; *Williams-Bearden*, 2021 WL 4743705, at *3; *see also Lurwick v. Lehigh Valley Health Network, Inc.*, No. CV 18-0981, 2019 WL 2060070, at *5 (E.D. Pa. May 9, 2019) ("When a Plaintiff fails to prosecute his action, outside of dismissal of the action, the Court cannot envision a sanction that would be appropriate.").   Therefore, the Court finds this factor weighs in favor of a sanction that grants the Defendants' motions to dismiss as uncontested.

(6)     *Meritoriousness of Claims or Defenses.*   Finally, the Court turns to the sixth factor.  According to *Poulis*, "a claim will be deemed meritorious when the allegations of the pleadings, if established at trial, would support recovery by plaintiff or would constitute a complete defense."  747 F.2d at 870.  This Court previously found Plaintiff's Complaint states valid claims against Defendants.  (*See* Doc. No. 6 (order screening the pleadings and ordering service on Defendants).)  Accordingly, this factor weights against dismissal.  We reemphasize, however, that not all factors must be present to support the dismissal of a case.  *See Mindek*, 964 F.2d at 1373.

*   *   *

Weighing these factors, the Court finds that King has abandoned his claims against Defendants; our analysis of the *Poulis* factors leads us to conclude that dismissal of the case is appropriate.

**IV.    CONCLUSION**

For the reasons set out above, Defendants' motions to dismiss are granted.  An appropriate order follows.